# UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

JAMES S. BENEDICT, CHRISTOPHER )
BOURJOS, RICHARD T. INGALLS, )
RANDALL G. JOHNSON, STEVEN E. )
JONGEWAARD, WILLIAM C. LATHAM, )
THEODORE LEKAS JR., TIMOTHY A. )
MCINTOSH, STEVEN POPE, RICK L. )
RAGAZZO, PAUL W. RUNGE, )      CIVIL ACTION NO. 1:23-CV-1563
JEFFERY N. SCHOLZEN, DENNIS M. )
SHEEHAN, CHRISTOPHER J. SMITH, )
SCOTT TRCKA, GREGORY G. WHITWORTH )      JURY DEMANDED
and ROBERT D. WILFONG, individually and on )
behalf of all other similarly situated individuals, )
)
**PLAINTIFFS** )
)
v. )
)
ROBERT MANFRED, COMMISSIONER OF )
BASEBALL; THE OFFICE OF THE )
COMMISSIONER OF BASEBALL, an )
unincorporated association also d/b/a MAJOR )
LEAGUE BASEBALL, AZPB LIMITED )
PARTNERSHIP; ATLANTA NATIONAL )
LEAGUE BASEBALL CLUB, LLC; )
BALTIMORE ORIOLES LIMITED )
PARTNERSHIP; BOSTON RED SOX )
BASEBALL CLUB L.P.; CHICAGO CUBS )
BASEBALL CLUB, LLC ; CHICAGO WHITE )
SOX, LTD.; THE CINCINNATI REDS, LLC; )
CLEVELAND GUARDIANS BASEBALL )
COMPANY, LLC; COLORADO ROCKIES )
BASEBALL CLUB, LTD.; DETROIT TIGERS, )
INC.; HOUSTON ASTROS, LLC; KANSAS )
CITY ROYALS BASEBALL CLUB LLC; )
ANGELS BASEBALL LP; LOS ANGLES )
DODGERS LLC; MARLINS TEAMCO LLC; )
MILWAUKEE BREWERS BASEBALL CLUB, )
L.P.; MINNESOTA TWINS, LLC; STERLING )
METS, L.P.; NEW YORK YANKEES )
PARTNERSHIP; ATHLETICS INVESTMENT )
GROUP LLC D/B/A OAKLAND ATHLETICS )
BASEBALL COMPANY; THE PHILLIES; )
PITTSBURGH ASSOCIATES; PADRES L.P.; )

SAN FRANCISCO BASEBALL ASSOCIATES )
LLC; THE BASEBALL CLUB OF SEATTLE, )
LLLP; ST. LOUIS CARDINALS, LLC; TAMPA )
BAY RAYS BASEBALL LTD.; RANGERS )
BASEBALL, LLC; ROGERS BLUE JAYS )
BASEBALL PARTNERSHIP; and )
WASHINGTON NATIONALS BASEBALL )
CLUB, LLC; )
)
**DEFENDANTS** )

## <u>SECOND AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT</u>

# TABLE OF CONTENTS

I.      Nature of the Action ...................................................................................................1

II.     The Parties .................................................................................................................2

        A.      The Plaintiffs ..............................................................................................2

        B.      The MLB Defendants ...................................................................................4

        C.      The Club Defendants ....................................................................................5

III.    Jurisdiction and Venue .............................................................................................13

IV.     Factual Allegations ..................................................................................................13

        A.      The Commissioner's Office and the MLB Clubs
                Act in Coordination in Relation to Older Scouts .................................................15

                1.      The Major League Constitution and Major League Rules .......................16

                2.      Club Practices Regarding Hiring of Scouts ...........................................18

                3.      Coordination of Efforts to Restrict Scouts Changing Clubs ...................19

                4.      The Scouting Wire and Joint Control of the Scout Labor Market ...........19

                5.      The Rise and Fall of the Central Scouting Bureau ................................21

                6.      Blacklisting of Older Scouts .............................................................23

                7.      Use of COVID-19 as a Pretext ..........................................................24

                8.      Use of Analytics as Pretext ..............................................................25

                9.      Reduction of Scouts' Employment in MLB ...........................................25

        B.      Collective Action Allegations...............................................................................29

        C.      Class Action Allegations......................................................................................29

        D.      Exhaustion of Administrative Remedies ...................................................... 31

V.      Causes of Action ...................................................................................................... 31

VI.     Jury Demand ............................................................................................................ 40

VII.    Relief Sought ........................................................................................................... 40

Plaintiffs file this Second Amended Complaint, based on the written representations of Defense counsel and pursuant to the Parties' Agreement, related to and naming the individual Major League Baseball Clubs (Clubs) by the legal names of the specific entities that own and operate the individual Clubs, without prejudice to renaming or naming other possible responsible entities, if any, as allowed by law.

## I.     Nature of The Action

1.     This is an individual and collective action brought under the United States Age Discrimination in Employment Act (the "ADEA") and a class action brought under various state anti-discrimination statutes by former major league baseball scouts ("Scouts," and each a "Scout"). Plaintiffs bring this action on behalf of themselves and all other similarly situated individuals over 40 years of age who have held the position of Scout for one or more of the 30 major league baseball Clubs (collectively the "Clubs," and each a "Club") and sought reemployment by a Club on one or more occasions beginning on the first day of the three year period prior to the date of filing of this action (the "Older Scouts"). Plaintiffs worked as Scouts for various Clubs, as defined below, and then sought reemployment after the first day of the three-year period prior to this action by one or more Clubs after they were no longer employed by their former Clubs. While they all had substantial experience in scouting, they were uniformly denied such reemployment, and they and other Older Scouts continue to be denied such reemployment. Plaintiffs allege that, in being denied such reemployment, the Club Defendants and the MLB Defendants, as defined below, have discriminated against Older Scouts on the basis of disparate treatment or disparate impact in favor of substantially younger Scouts or Scouts under 40 ("Younger Scouts").

## II.  The Parties

**A.  The Plaintiffs**

2.  Plaintiff James S. Benedict is 62 years old and resides in Bradenton, Florida. Mr. Benedict worked as a Scout for multiple Clubs for approximately 32 years before his termination, effective October 31, 2020, as a Scout for the Chicago Cubs.

3.  Plaintiff Christopher Bourjos is 68 years old and resides in Scottsdale, Arizona. Mr. Bourjos worked as a Scout for multiple Clubs for approximately 37 years before his termination, effective November 1, 2020, as a Scout for the Saint Louis Cardinals.

4.  Plaintiff Richard T. Ingalls is 71 years old and resides in Long Beach, California. Mr. Ingalls worked as a Scout for multiple Clubs for approximately 39 years before his termination, effective November 2018, as a Scout for the Cincinnati Reds.

5.  Plaintiff Randall G. Johnson is 66 years old and resides in Valley Center, California. Mr. Johnson worked as a Scout for multiple Clubs for approximately 26 years before his termination, effective November 1, 2020, as a Scout for the Detroit Tigers.

6.  Plaintiff Steven E. Jongewaard is 59 years old and resides in West Chester, Ohio. Mr. Jongewaard worked as a Scout for multiple Clubs for approximately 29 years before his termination, effective September 2019, as a Scout for the Philadelphia Phillies.

7.  Plaintiff William C. Latham is 64 years old and resides in Trussville, Alabama. Mr. Latham worked as a Scout for multiple Clubs for over 24 years, until his termination, effective approximately September 2020 as a Scout for the Los Angeles Dodgers.

8.  Plaintiff Theodore Lekas Jr. is 67 years old and resides in Brewster, Massachusetts. Mr. Lekas Jr. worked as a Scout for multiple Clubs for approximately 34 years, until his termination, effective October 7, 2022, as a Scout for the Atlanta Braves.

9. Plaintiff Timothy A. McIntosh is 58 years old and resides in Golden Valley, Minnesota. Mr. McIntosh worked as a Scout for multiple Clubs for over 35 years, until his termination, effective September 30, 2020, as a Scout for the Los Angeles Angels.

10. Plaintiff Steven Pope is 65 years old and resides in Asheville, North Carolina. Mr. Pope worked as a Scout for multiple Clubs for approximately 35 years before his termination, effective approximately September 2020, as a Scout for the Los Angeles Dodgers.

11. Plaintiff Rick L. Ragazzo is 63 years old and resides in Leona Valley, California. Mr. Ragazzo worked as a Scout for multiple Clubs for approximately 34 years before his termination, effective January 1, 2021, as a Scout for the Atlanta Braves.

12. Plaintiff Paul W. Runge is 65 years old and resides in Palm Beach Gardens, Florida. Mr. Runge worked as a Scout for multiple Clubs for approximately 3 years, until his termination, effective January 1, 2021, as a Scout for the Atlanta Braves.

13. Plaintiff Jeffrey N. Scholzen is 55 years old and resides in W. Hurricane, Utah. Mr. Scholzen worked as a Scout for multiple Clubs for approximately 30 years before his termination, effective approximately August 2020, as a Scout for the Milwaukee Brewers.

14. Plaintiff Dennis M. Sheehan is 71 years old and resides in Glasco, New York. Mr. Sheehan worked as a Scout for multiple Clubs for approximately 28 years before his termination, effective approximately November 1, 2020, as a Scout for the Arizona Diamondbacks.

15. Plaintiff Christopher J. Smith is 64 years old and resides in Lago Vista, Texas. Mr. Smith worked as a Scout for multiple Clubs for approximately 32 years, until his termination, effective approximately September 9, 2020, as a Scout for the Los Angeles Dodgers.

16. Plaintiff Scott Trcka is 66 years old and resides in Hobart, Indiana. Mr. Trcka worked as a Scout for multiple Clubs for approximately 30 years, until his termination, effective

approximately September 2016, as a Scout for the Philadelphia Phillies.

17.    Plaintiff, Gregory G. Whitworth is 58 years old and resides in Huntington Beach, California. Mr. Whitworth worked as a Scout for multiple Clubs for over 28 years before his termination, effective July 2021, as a Scout for the Tampa Bay Rays.

18.    Plaintiff Robert D. Wilfong is 69 years old and resides in San Dimas, California. Mr. Wilfong worked as a Scout for multiple Clubs for approximately 28 years before his termination, effective November 2019, as a Scout for the Los Angeles Angels.

**B.    The MLB Defendants**

19.    Defendant The Office of the Commissioner of Baseball ("Commissioner's Office"), in accordance with Article II, Section 1 of the Major League Constitution, is an unincorporated association that operates (and/or does business as) Major League Baseball ("MLB"). MLB is comprised of thirty Clubs, all of which are named Defendants ("Club Defendants"). The Commissioner's Office and the Clubs operate MLB as a unified operation in regard to exercising common control over baseball operations and employment operations of the Clubs, making the Club Defendants and MLB Defendants, as defined below, based on that consideration and others addressed below pertinent to the claims of Older Scouts, joint employers. Defendant MLB as an unincorporated association, may be served through Commissioner Robert Manfred at:

The Office of the Commissioner of Baseball
1271 Avenue of the Americas
New York, NY 10020

20.    Defendant Robert Manfred ("Manfred" together with the Commissioner's office, are referred to as the "MLB Defendants") is the Commissioner of Baseball (the "Commissioner") under the Major League Constitution. Manfred can be served at:

The Office of the Commissioner of Baseball
1271 Avenue of the Americas
New York, NY 10020

**C.    The Club Defendants**

21.    Defendant AZPB Limited Partnership (d/b/a the "Arizona Diamondbacks") is a Club. Acting jointly with the MLB Defendants and/or on its own behalf, the Arizona Diamondbacks denied reemployment (and/or continue to deny reemployment) to Plaintiffs and similarly situated Older Scouts. It may be served through one of the following:  its s registered agent for service of process is:

Ken Kendrick, Mike Chipman, Jeff Royer, General Partners;
Derrick Hall, CEO; Tom Harris, Mike Hazen, r Cullen Maxey, Executive Vice Presidents
or any officer of the partnership at
Chase Field
401 E. Jefferson Street
Phoenix, Arizona 85004

22.    Defendant Atlanta National League Baseball Club, LLC (d/b/a the "Atlanta Braves") is a Club. Acting jointly with the MLB Defendants and on its own behalf, the Atlanta Braves denied reemployment (and/or continue to deny reemployment) to Plaintiffs and similarly situated Older Scouts. The registered agent for service of process of Atlanta National League Baseball Club, LLC is:

CSC of Cobb County, Inc.
192 Anderson Street SE, Suite 125,
Marietta, GA, 30060

23.    Defendants Baltimore Orioles Limited Partnership (d/b/a the "Baltimore Orioles") is a Club. Acting jointly with the MLB Defendants and on its own behalf, the Baltimore Orioles denied reemployment (and/or continue to deny reemployment) to Plaintiffs and similarly situated Older Scouts. Its registered agent for service of process is:

Mike Hoppes
333 W. Camden Street
Baltimore, Maryland 21201

24.     Defendant Boston Red Sox Baseball Club L.P. (d/b/a the "Boston Red Sox") is a Club. Acting jointly with the MLB Defendants and on its own behalf, the Boston Red Sox denied reemployment (and/or continue to deny reemployment) to Plaintiffs and similarly situated Older Scouts. Its registered agent for service of process is:

CT Corporation System
155 Federal Street, Suite 700
Boston, Massachusetts 02110

25.     Defendant Chicago Cubs Baseball Club, LLC (d/b/a the "Chicago Cubs") is a Club. Acting jointly with the MLB Defendants and on its own behalf, the Chicago Cubs denied reemployment (and/or continue to deny reemployment) to Plaintiffs and similarly situated Older Scouts. Its registered agent for service of process is:

CT Corporation System
208 S. LaSalle Street, Suite 814
Chicago, Illinois 60604-1101

26.     Defendant Chicago White Sox, Ltd. (d/b/a the "Chicago White Sox") is a Club. Acting jointly with the MLB Defendants and on its own behalf, the Chicago White Sox denied reemployment (and/or continue to deny reemployment) to Plaintiffs and similarly situated Older Scouts. Its registered agent for service of process is:

William D. Waters
333 W. 35th Street
Chicago, Illinois 60616

27.     Defendant The Cincinnati Reds, LLC (d/b/a the "Cincinnati Reds") is a Club. Acting jointly with the MLB Defendants and on its own behalf, the Cincinnati Reds denied

reemployment (and/or continue to deny reemployment) to Plaintiffs and similarly situated Older

Scouts. It's registered agent for service of process is:

James A. Marx
Great American Ball Park
100 Joe Nuxhall Way
Cincinnati, Ohio 45202

28.     Defendant Cleveland Guardians Baseball Company, LLC (formally known as the

Cleveland Indians and now d/b/a the "Cleveland Guardians") comprise a Club. Acting jointly with

the MLB Defendants and on its own behalf, the Cleveland Guardians denied reemployment (and/or

continue to deny reemployment) to Plaintiffs and similarly situated Older Scouts It's registered

agent for service of process is:

TDD Service, Inc.
100 7th Avenue, Suite 150
Chardon, Ohio 44024

29.     Defendant Colorado Rockies Baseball Club, Ltd. (d/b/a "Colorado Rockies") is a

Club. Acting jointly with the MLB Defendants and on its own behalf, the Colorado Rockies denied

reemployment (and/or continue to deny reemployment) to Plaintiffs and similarly situated Older

Scouts. It's registered agent for service of process is:

Bian P. Gaffney
2001 Blake Street
Denver, CO 80205

30.     Defendant Detroit Tigers, Inc. (d/b/a "Detroit Tigers") is a Club. Acting jointly with

the MLB Defendants and on its own behalf, the Detroit Tigers denied reemployment (and/or

continue to deny reemployment) to Plaintiffs and similarly situated Older Scouts. It's registered

agent for service of process is:

Stanford Berenbaum
2211 Woodward Avenue,
Detroit, MI 48201.

31.     Defendant Houston Astros, LLC (d/b/a "Houston Astros") is a Club. Acting jointly with the MLB Defendants and on its own behalf, the Houston Astros denied reemployment (and/or continue to deny reemployment) to Plaintiffs and similarly situated Older Scouts. It's registered agent for service of process is:

Corporate Creations Network Inc.
5444 Westheimer #1000
Houston, TX 77056.

32.     Defendant Kansas City Royals Baseball Club LLC (d/b/a "Kansas City Royals") is a Club. Acting jointly with the MLB Defendants and on its own behalf, the Kansas City Royals denied reemployment (and/or continue to deny reemployment) to Plaintiffs and similarly situated Older Scouts. It's registered agent for service of process is:

CT Corporation System
120 South Central Avenue
Clayton, MO 63105.

33.     Defendant Angels Baseball LP (d/b/a the "Los Angeles Angels of Anaheim") is a Club. Acting jointly with the MLB Defendants and on its own behalf, the Los Angeles Angels of Anaheim denied reemployment (and/or continue to deny reemployment) to Plaintiffs and similarly situated Older Scouts. It's registered agent for service of process is:

Molly Taylor
2000 Gene Autry Way
Anaheim, CA 92806

34.     Defendant Los Angeles Dodgers LLC (d/b/a the "Los Angeles Dodgers") is a Club. Acting jointly with the MLB Defendants and on its own behalf, the Los Angeles Dodgers denied reemployment (and/or continue to deny reemployment) to Plaintiffs and similarly situated Older Scouts. The registered agent for service of process for the Los Angeles Dodgers, LLC is:

The Corporation Company

555 Capitol Mall Ste 1000
Sacramento, CA 95814

35.     Defendant Marlins Teamco LLC (d/b/a "Miami Marlins") is a Club. Acting jointly with the MLB Defendants and on its own behalf, the Miami Marlins denied reemployment (and/or continue to deny reemployment) to Plaintiffs and similarly situated Older Scouts. It's registered agent for service of process is:

CT Corporation System
1200 South Pine Island Road
Plantation, FL 33324.

36.     Defendants Milwaukee Brewers Baseball Club, L.P. (d/b/a the "Milwaukee Brewers") is a Club. Acting jointly with the MLB Defendants and on its own behalf, the Milwaukee Brewers denied reemployment (and/or continue to deny reemployment) to Plaintiffs and similarly situated Older Scouts. It's Registered Agent for Service of Process is:

Milwaukee Brewers Baseball Club, L.P.
Rick Schlesinger
American Family Field
One Brewers Way
Milwaukee, WI 53214

37.     Defendant Minnesota Twins, LLC (d/b/a "Minnesota Twins") is a Club. Acting jointly with the MLB Defendants and on its own behalf, the Minnesota Twins denied reemployment (and/or continue to deny reemployment) to Plaintiffs and similarly situated Older Scouts. It's Registered Agent for Service of Process is:

Twins Sports, Inc.
250 Nicollet Mall, Suite 600
Minneapolis, MN 55401

38.     Defendant Sterling Mets, L.P. (d/b/a the "New York Mets") is a Club. Acting jointly with the MLB Defendants and on its own behalf, the New York Mets denied reemployment (and/or continue to deny reemployment) to Plaintiffs and similarly situated Older Scouts. It's

registered agent for service of process is:

CT Corporation System
28 Liberty Street
New York, New York 10005

39.     Defendant New York Yankees Partnership (d/b/a "New York Yankees") is a Club. Acting jointly with the MLB Defendants and on its own behalf, the New York Yankees denied reemployment (and/or continue to deny reemployment) to Plaintiffs and similarly situated Older Scouts. It's registered agent for service of process is:

Lonn A. Frost
New York Yankees
Yankees Stadium
Bronx, New York 1451

40.     Defendant Athletics Investment Group LLC d/b/a Oakland Athletics Baseball Company (also d/b/a the "Oakland Athletics" and/or the "Oakland A's") is a Club. Acting jointly with the MLB Defendants and on its own behalf, the Oakland Athletics denied reemployment (and/or continue to deny reemployment) to Plaintiffs and similarly situated Older Scouts. It's registered agent for service of process is:

C T Corporation System
330 N Brand Blvd
Glendale, CA 91203

41.     Defendant The Phillies (d/b/a the "Philadelphia Phillies") is a Club. Acting jointly with the MLB Defendants and on its own behalf, the Phillies denied reemployment (and/or continue to deny reemployment) to Plaintiffs and similarly situated Older Scouts. It may be served through one of the following named agent or other agent allowed by law:

John Middleton, Managing Partner; or
Leslie Safran, Kathy Killian, Sean Walker, Vice Presidents;
Citizens Bank Park:
One Citizens bank Way
Philadelphia, PA 19148-5249

42.     Defendant Pittsburgh Associates (d/b/a the "Pittsburgh Pirates") is a Club. Acting jointly with the MLB Defendants and on its own behalf, the Pittsburgh Pirates denied reemployment (and/or continue to deny reemployment) to Plaintiffs and similarly situated Older Scouts. It may be served through one of the following named agent or other agent allowed by law:

Bob Nutting, Chairman; Travis Williams, President; or
Drew Singer, Associate General Counsel;
PNC Park at North Shore
115 Federal Street
Pittsburgh, PA 15212

43.     Defendant Padres L.P. (d/b/a the "San Diego Padres") is a Club. Acting jointly with the MLB Defendants and on its own behalf, the San Diego Padres denied reemployment (and/or continue to deny reemployment) to Plaintiffs and similarly situated Older Scouts.

Padres L.P.
Caroline Perry
100 Park Blvd
San Diego, Ca 92101

44.     Defendant San Francisco Baseball Associates LLC" (d/b/a "San Francisco Giants") is a Club. Acting jointly with the MLB Defendants and on its own behalf, the San Francisco Giants denied reemployment (and/or continue to deny reemployment) to Plaintiffs and similarly situated Older Scouts. It's Registered Agent for Service of Process is:

C T Corporation System
330 N Brand Blvd
Glendale, CA 91203

45.     Defendant The Baseball Club of Seattle, LLLP (d/b/a the "Seattle Mariners") is a Club. Acting jointly with the MLB Defendants and on its own behalf, the Seattle Mariners denied reemployment (and/or continue to deny reemployment) to Plaintiffs and similarly situated Older Scouts. It's registered agent for service of process is:

46.     Defendant St. Louis Cardinals, LLC (d/b/a the "St. Louis Cardinals") is a Club.

Acting jointly with the MLB Defendants and on its own behalf, the St. Louis Cardinals denied

reemployment (and/or continue to deny reemployment) to Plaintiffs and similarly situated Older

Scouts. It's registered agent for service of process is:

CT Corporation System
1200 South Pine Island Road
Plantation, FL 33324.

47.     Defendant Tampa Bay Rays Baseball Ltd. (d/b/a the "Tampa Bay Rays") is a Club.

Acting jointly with the MLB Defendants and on its own behalf, the Tampa Bay Rays denied

reemployment (and/or continue to deny reemployment) to Plaintiffs and similarly situated Older

Scouts. It's registered agent for service of process is:

John P. Higgins
Tropicana Field,
One Tropicana Drive
St. Petersburg, FL 33705.

48.     Defendants Rangers Baseball, LLC (d/b/a/ the "Texas Rangers") comprise a Club.

Acting jointly with the MLB Defendants and on its own behalf, the Texas Rangers denied

reemployment (and/or continue to deny reemployment) to Plaintiffs and similarly situated Older

Scouts. It's registered agent for service of process is:

CT Corporation System
1999 Bryan St. Ste 900
Dallas, TX 75201-3136.

49.     Defendant Rogers Blue Jays Baseball Partnership (d/b/a the "Toronto Blue Jays")

is a Club. Acting jointly with the MLB Defendants and on its own behalf, the Toronto Blue Jays

denied reemployment (and/or continue to deny reemployment) to Plaintiffs and similarly situated

Older Scouts. It's registered agent for service of process is:

Rogers Communications Inc.
1 Blue Jays Way, Suite 3200
Toronto, ON M5V 1J1

50.     Defendant Washington Nationals Baseball Club, LLC (d/b/a "Washington Nationals") is a Club. Acting jointly with the MLB Defendants and on its own behalf, the Washington Nationals denied reemployment (and/or continue to deny reemployment) to Plaintiffs and similarly situated Older Scouts. It's registered agent for service of process is:

Edward Cohen and/or CT Corporation
1050 Connecticut Avenue, NW
Washington, DC 20036

### III.     Jurisdiction and Venue

51.     This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. §1331 because Plaintiffs assert claims under the ADEA. This Court has supplemental jurisdiction over the Plaintiffs' state statutory claims pursuant to 28 U.S.C. § 1367.

52.     The District of Colorado is a proper venue for this action pursuant to 28 U.S.C. § 1391(b)(2) because at least one of Defendants, the Colorado Rockies is located in this District and Division, each Defendant conducts business in this District and Division by playing, officiating or otherwise conducting Major League baseball games in this District and Division, and a substantial part of the acts or omissions giving rise to Plaintiffs' claims occurred in this District and Division. Indeed, under U.S.C. § 1391(b)(2), venue is proper in the location of any of the Club Defendants, including this District and Division.

### IV.     Factual Allegations

53.     The Club Defendants, each acting as a joint employer with the MLB Defendants, by denying reemployment at various times in 2020, 2021 and 2022, and since December 31, 2022,

to Older Scouts, have violated the ADEA, and continue to violate the ADEA, discriminating against Older Scouts by not hiring them for open positions based on a common plan or practice among Defendants. Over the last several years, the MLB Defendants and Club Defendants have engaged not only in systematically bringing about the separation from Clubs of Older Scouts to build a workforce of Younger Scouts, but in denying reemployment of Older Scouts by Clubs. The Clubs' conduct in that regard, as joint employers with the MLB Defendants, constitutes unlawful age discrimination under the ADEA, both as a matter of disparate treatment and disparate impact, and also violates one or more state anti-discrimination statutes both as a matter of disparate treatment and disparate impact.

54.     Plaintiffs bring their claims under the ADEA for themselves and on behalf of similarly situated individuals who may choose to opt into this action pursuant to 29 U.S.C. §§216b) and 626(b). Plaintiffs have each filed timely charges of discrimination for failure to hire under the ADEA. More than 60 days have passed since the filing of each Plaintiff's charge such that Plaintiff's individual claims under the ADEA are ripe for filing in this action.

55.     Subject to receipt of any necessary notice of right to sue or the passage of any necessary period of time, Plaintiffs also bring claims under any and all age discrimination statutes of the states in which the Club Defendants and MLB Defendants operate pursuant to Fed. R. Civ. P. 23. One or more of Plaintiffs have each filed a timely charge of discrimination under such statutes.

56.     Plaintiffs bring both their ADEA and state statutory claims on behalf of themselves and other Older Scouts (the "Scout Collective"). The members of the Scout Collective consist of a large number of Older Scouts who have been, continue to be, and will be, refused reemployment, including by being blacklisted for reemployment in any position as Scout with Club Defendants.

The Scout Collective would benefit from the issuance of a court-supervised notice of this action and the opportunity to join this action under the ADEA or become a class member under Rule 23. The members of the Scout Collective are known to Defendants, are readily identifiable, and can be located through Defendants' records. Notice should be sent to the members of the Scout Collective pursuant to 29 U.S.C. § 216(b).

57.     Plaintiffs are among thousands of MLB and Club employees to be separated from employment with Defendants in the last eight years as a result of a decision by the Club Defendants and the MLB Defendants to replace older employees with younger employees. On January 25, 2015, Manfred succeeded Bud Selig as commissioner of professional baseball. At that time, MLB began a "One Baseball" initiative, coinciding with the adoption of a "Moneyball" statistically oriented approach by Clubs, leading to analytics and video scouting as the primary focus of Scouts. As part of the reform process, MLB endeavored to begin heavily recruiting Younger Scouts, at the same time intentionally pushing out, from the Scout Collective, Older Scouts with prior knowledge, qualifications, expertise and training, based on a false stereotype that Older Scouts lacked the ability to use analytics and engage in video scouting with the same acumen as Younger Scouts.

### A.     The Commissioner's Office and the MLB Clubs Act in Coordination in Relation to Older Scouts

58.     The basic job of a Scout is to evaluate players' skills. They do so while attending games—at high schools and colleges, and at international games, minor league games and sometimes major league games. They do this sometimes thousands of miles, and countless hours away, from their homes. Some Scouts focus more on amateur players while others focus more on professional players. However, the basic job of a Scout remains the same: to evaluate players and present this information in reports.

59.     Scout's reports use a scale ranging from 20 to 80, with 80 representing the highest possible grade. The reports provide information to Clubs that assist them in determining which players to pursue even while Scouts are removed from the actual process of making player personnel decisions. Scouts do not make the final decisions on which players to sign and do not determine the compensation for players. Instead, so-called front office personnel of the Clubs generally perform those services.

60.     Defendants, both openly and clandestinely, coordinate their employment-related conduct with respect to players and Scouts.

### 1.     The Major League Constitution and Major League Rules

61.     Under Article II, Section 2(a) of the Major League Constitution, a copy of which is filed in a separate appendix as Exhibit "A," the Commissioner of Baseball has executive responsibility for labor relations between the Clubs and their employees. Under Article II, the Commissioner is to act "in the best interests of the national game of Baseball."

62.     Under Article II, Section 2, paragraph (b) of the Major League Constitution, the Commissioner, in furtherance of the Commissioner's labor relations authority and acting within the Commissioner's perception of what is in the "best interest" of Baseball, has the authority to investigate, summon persons, order the production of documents, and impose sanctions for Clubs or individuals associated with Clubs "in case of refusal to appear or produce."

63.     Under Article II, Section 3, of the Major League Constitution, the Commissioner has authority to permanently ban "owners, officers, employees, or players" from baseball. That is the Commissioner possesses the official authority under the Major League Constitution to blacklist Scouts.

64. Under Article IV of the Major League Constitution, the Commissioner may create rules that are binding on Clubs. Rules 3(b) and 3(k) within the Major League Rules, a copy of which is filed in a separate appendix as Exhibit "B", respectively, require uniform contracts for major and minor league players and prohibit "tampering."

65. Major League Rule 3(k) states that in order to "preserve discipline and competition, and to prevent the enticement of players, coaches, managers, and umpires, there shall be no negotiations or dealings respecting employment" between these categories of workers and a Club if that worker is already employed by another Club. Under the Commissioner's general authority to control labor relations and/or Rule 3(k), if a Club wants to speak with a coach or player who is under contract with a second Club, the first Club must obtain written authorization from the second Club. Defendants have likewise coordinated the conduct of the Clubs related to Scouts under the Commissioner's general labor relations authority and/or Major League Rules 3(b) and 3(k).

66. In accordance with the Commissioner's labor relations responsibility and/or Major League Rule 3(b), each Scout is required to enter into a Uniform Employment Contract approved by the Commissioner.

67. On the face of Major League Rules 3(b) and 3(k), Rule 3(b) applies only to major and minor league players, and Rule 3(k) apparently applies only to players, coaches, managers, and umpires. However, Plaintiffs allege, upon information and belief, that Defendants have expressly or impliedly agreed that Rule 3(k) applies to Scouts. Defendants have accordingly coordinated their behavior and have implemented a pattern, practice and *de facto* rule applicable to Scouts prohibiting communication about job opportunities while a Scout is under contract with a Club.

68.     Application of Rule 3(k) to Scouts is best illustrated by an example. A Scout under contract with the Colorado Rockies cannot talk to other Clubs about an employment opportunity. Also, a Club in such a circumstance would have to first receive permission from the Colorado Rockies' front office to enter negotiations. However, as a pattern, practice or *de facto* rule, such permission is generally only granted if the other job opportunity would be a promotion for the Scout. Even then, the Colorado Rockies would not be required to grant permission. In a properly functioning, competitive labor market, each Club would compete for Scouts and lateral hiring would occur unimpeded. For example, if a Club other than the Colorado Rockies believed one of the Colorado Rockies' Scouts did his or her job well, that Club would be free to call the Scout and offer greater compensation to entice a lateral move. And if a Colorado Rockies' Scout believed that another Club offered better wages or other benefits, the Scout could contact the other Club about employment opportunities. Defendants' anti-tampering pattern, practice and *de facto* rule, however, prohibits this competitive activity from occurring, which inhibits lateral hiring and restrains the Scout labor market.

## 2.     Club Practices Regarding Hiring of Scouts

69.     Traditionally, openings with Clubs for Scouts have been communicated to Scouts informally from one Club to a Scout or Scouts in whom they may have an interest, or from a Scout or Scouts who have become aware of an opening. There is no website or other forum for all Scout openings to be posted. Scouting is about networking, and so openings for Scouts have been made known to the Scout by an informal network, not through formal job postings or advertisements. They attend formal and informal meetings, often at large hotel chains and resorts. For example, at the annual MLB Winter Meetings concerning baseball operations, Scouts often attend and learn of employment opportunities with one Club or another.

### 3. Coordination of Efforts to Restrict Scouts Changing Clubs

70. With some exceptions, based on Defendants' application of Major League Rule 3(k) in regard to Scouts, a Scout is stuck with his or her Club employer until the Club terminates the Scout. In 2020, 2021 and 2022, based on Defendants' application of Rule 3(k), hundreds of Scouts' contracts were not renewed or Scouts otherwise had their employment terminated, and the Club Defendants and the MLB Defendants subsequently have acted to prevent the reemployment of Older Scouts or refused the reemployment of Older Scouts. This has involved disparate treatment of, and/or disparate impact upon, Older Scouts because they were not being reemployed and have been effectively and intentionally frozen out of the Scout labor market to an extent not applicable to Younger Scouts.

71. In 2020, 2021 and 2022, Defendants also agreed to institute an offset policy to the detriment of Older Scouts. The policy applies to a Scout fired by one Club before the expiration of his or her scouting contract but hired by another Club. If the Scout is still contractually entitled to compensation from his former Club, then his compensation due from his old Club will be offset by the amount being paid under his or her new contract with the new Club. The offset policy, which is administered by the MLB Defendants, prevents a Scout from gaining compensation from both the firing Club and the hiring Club, if any. Without the policy, a scout would be unrestricted in negotiating a salary with another Club and the Clubs would be less likely to fire Scouts during the pendency of scouting contracts with them.

### 4. The Scouting Wire and Joint Control of the Scout Labor Market

72. Upon information and belief, Clubs, prior to 2015, maintained a common practice of putting non-renewed or otherwise terminated Scouts on a "wire" when they were no longer employed by such Clubs. When such a Scout's name was put on the "wire," he was considered

eligible for employment by other Clubs. This practice benefited Scouts by assisting in them finding replacement employment. However, this practice stopped on or about January 25, 2015 when Manfred became the Commissioner. Upon information and belief, the termination of the scouting wire was mandated by the Commissioner's Office and each Club was required to stop using the scouting "wire."

73.     On or about January 25, 2015, Defendants adopted a new practice to replace the Scout "wire." Under this new practice, instead of allowing Scouts to seek reemployment through the "wire," Clubs continued to pay the Plaintiffs contractually obligated salary but informed them that their services would no longer be needed. Upon information and belief, this new practice was mandated by the Commissioner's Office and each Club was required to adopt the new policy.

74.     Since 2020, Clubs have also otherwise impinged upon terminated Scouts pursuing opportunities to seek new employment with another Club. Preying on the scouts' need for income, Defendants offered to "pay out" the remainder of their contracts until December 31 of the termination year. This was an illusory promise to pay the Scouts when the Clubs were already contractually obligated to pay amounts due under the Scouts' contracts through the end of the term of such contracts. Upon information and belief, Club Defendants thereby intentionally placed an obstacle to Older Scouts' compliance with applicable 180-day and 300-day deadlines for filing charges of age discrimination to exhaust administrative remedies under the ADEA and state age discrimination statutes by informing Older Scouts of their terminations before their scouting contracts lapsed knowing that the dates of such notices of termination would govern the timelines of charges of discrimination while assuming, at the same time, that Scouts would not know the timing of such notices would do so. Specifically, Older Scouts' fear of retaliation from Clubs and MLB Defendants caused many Scouts not to file timely charges of discrimination out of fear they

would no longer receive their contractual payments and related health and pension insurance benefits.

75.     Also, since 2020, the Clubs have relied upon confidentiality provisions in contracts or separation agreements with Scouts to place an obstacle to Scouts seeking reemployment with other Clubs.

76.     Defendants' control of the scouting labor market differs significantly from Defendants' agreements to limit competition for baseball player services. For many years, Defendants have used reserve clauses and other means to control the player labor market. Indeed, these tools are written into the collective bargaining agreement between MLB and the union representing the players – the Major League Baseball Players Association. Likewise, MLB has a collective bargaining agreement with its umpires. However, despite being subjected to a regime under which their contracts have to be submitted to and approved by the Commissioner, and without having the ability to change teams because of the effective imposition of Rule 3(k) restrictions, MLB Scouts are not unionized. Players, of course, certainly play a central role in the staging of baseball games. Thus, while an agreement to control player movements may be essential to the stability of staging competitive professional baseball games and may enhance the vitality and viability of baseball, the restrictions adopted by Defendants as joint employers of Scouts are not essential and in no way enhance the vitality or viability of baseball. Even more to the point, while such conduct might be protected from antitrust by MLB's exemption from federal antitrust law, such collusion cannot properly be used to violate the ADEA and state anti-discrimination statutes.

### 5.     The Rise and Fall of the Central Scouting Bureau

77.     MLB created a Central Scouting Bureau in 1968 at a point when Clubs were

restructuring their scouting departments. It became the MLB Scouting Bureau in 1974 and became subject to control by the Commissioner's Office in 1985. In March 2018, MLB terminated five of the remaining seven scouts at the MLB Scouting Bureau, all but shuttering the game's centralized nerve center for scouting over the prior 50 years. The five scouts that were terminated were aged 67, 62, 60, 53, and 44, and the two scouts not terminated were aged 43 and 40. This was the "writing on the wall" for Older Scouts still employed by Clubs. These youngest two remaining scouts are no longer serving as Scouts for the MLB and there is currently no Scouting Bureau. In connection with the March 2018 termination of the five oldest Scouts within the MLB Scouting Bureau, the instruction to terminate such Scouts was originally communicated by former Commissioner's Office representative Kim Ng to a senior director within the MLB Scouting Bureau, Frank Marcos, as an official directive from Manfred to fire all remaining Older Scouts within the MLB Scouting Bureau. He refused the directive and subsequently resigned, on information and belief on terms agreed with the MLB.

78.     Even without the more detailed individualized evidence of age discrimination against individual Plaintiffs described below, simultaneous and parallel actions of Defendants against Plaintiffs and similarly situated Older Scouts, purportedly in order to maintain an even playing field among the Clubs, have collectively reduced the number of Older Scouts employed by each Club. The absence of Older Scouts also injured the game of baseball in a variety of ways. First, scouting fills the holes in areas where the game of baseball, as played, is not conducive to the creation of statistics that can be analyzed, such as inner-city America and third world nations. For years, the number of African-Americans in MLB has been decreasing. While this is caused by a variety of factors, Defendants' across-the-board coordinated reduction of Older Scouts will only increase this phenomenon. Second, the increase in analytics has made the game of baseball more

robotic and less enjoyable to watch, as evidenced by new rules implemented for the 2023 season. Indeed, as reported by numerous media sources, Manfred, in discussing the role of analytics in baseball, has recently admitted the damage that it has done to the game, stating: "Once everybody's doing it, that little margin that maybe you're getting…I am sure that whatever that margin was at one point in time, whatever it is today, it sure as heck is not worth the damage that was done to the game over a period of time." While this statement, similar recent admissions by others associated with the Club Defendants and MLB Defendants, and rule changes, may limit the damage done to the game of baseball, to date, neither the MLB Defendants nor the Club Defendants have been willing to admit the damage done to baseball from the reduced number of Older Scouts. Just as instant replay can enhance the role of umpires, it cannot replace the human element that umpires provide. Similarly, the human element of Scouts cannot be replaced by video cameras or the radar gun.

### 6. Blacklisting of Older Scouts

79. The MLB Defendants' participation in a common plan or practice with the Clubs who have refused to rehire Older Scouts is evidenced, in part, by a list or lists of Senior Scouts formerly associated with one or more Clubs provided to one or more of the Clubs being used to refuse to rehire such Scouts, or directives by the Commissioner's office to one or more such Clubs frustrating or otherwise preventing the rehiring of such Scouts, or both. For example, Atlanta Braves director of Latin American scouting, Jonathan Cruz, informed former Scout Gordon Blakeley that a list exists and that Mr. Blakeley was on this list of non-hirable Scouts. Upon information and belief, and based on statements to individual Plaintiffs, one or more Clubs has possession of such a list or lists identifying those Older Scouts who cannot be hired back into professional baseball because, among other things, of their age. Plaintiffs who have contacted

employees of Clubs in the process of seeking reemployment as Scouts have been told they were restricted from applying for new scouting jobs upon non-renewal or other termination of their employment based on such a list. Coordinated use of such a list and other similar means to carry out age discrimination violates the ADEA and state anti-age-discrimination statutes.

80.     The MLB Defendants coordinated with the Club Defendants during the 2020 season to discriminate against Older Scouts because of the COVID-19 pandemic. Defendants found the pandemic to be an opportunity to terminate an entire class of older employees more susceptible, on the basis of age, to the COVID-19 virus. Instead of applying for federal PPP loans that would allow them to shoulder the financial burden of maintaining Older Scouts, Defendants chose to terminate the employment of Older Scouts by systematic non-renewals and other means.

81.     Prior to 2020, the number of Scouts maintained by the Defendants had been stable for decades, being subject to only minor variations from year to year. Indeed, Plaintiffs average over 60 years of age and over three decades of service with Club Defendants. Based on their knowledge of the stability of the MLB, Plaintiffs maintained a realistic expectation that their future employment would remain stable within one of America's most loved and profitable endeavors.

82.     The practices of Defendants referred to above establish that Defendants have been acting as joint employers of Older Scouts for purposes of the ADEA since well before 2015. The MLB Defendants acted as joint employers with Club Defendants in first making reemployment of Older Scouts more difficult, then overseeing and carrying out mass terminations of employment of Older Scouts, and then denial of reemployment to Older Scouts.

### 7.     Use of COVID-19 as a Pretext

83.     Between February 2020 and 2022, the Clubs used the COVID-19 pandemic to justify the termination of employment of many Older Scouts. In 2020, Defendants did not renew

or otherwise terminate the contracts for 51 of 83 Older Scouts. All Club Defendants engaged in terminations of Older Scouts. Older Scouts were told that such terminations were related to the COVID-19 pandemic. Thus, the Older Scouts expected to be eligible to be rehired after the pandemic ended, either by their prior Club or by another Club. However, even since the pandemic was over and MLB revenues returned, Older Scouts are being systematically denied reemployment, including through the use of a list or lists and an agreement, pattern, practice and effective rule to maintain lower numbers of Older Scouts throughout MLB.

### 8. Use of Analytics as Pretext

84. Defendants may assert that the reason for the Older Scouts' inability to obtain reemployment is the impact of a change to an "analytical" approach to evaluating players. However, this is an ongoing pretext for coordinated and systematic discrimination based on age. While there is no doubt that the trends in favor of analytics have worked to some degree, some teams see a competitive advantage from playing against trends. Indeed, many of the Older Scouts that Defendants have terminated or refused to reemploy have utilized statistics since the early 1900s. Various types of statistical analysis have always been among the tools that Scouts utilize to better understand the projection of professional baseball players.

### 9. Reduction of Scouts' Employment in MLB

85. The fact that even the richest teams in baseball, like the Yankees and the Dodgers, continue to refuse to return to pre-2020 levels of Scouts, is also indicative that an MLB-wide agreement exists and/or is mandated by the Commissioner's Office to permanently deny reemployment to Older Scouts terminated in 2020, 2021 and 2022.

86. In addition to the otherwise inexplicably large numbers of Older Scouts who were terminated in 2020, 2021 and 2022 and have been unable to find reemployment as Scouts despite

the end of the COVID-19 pandemic and the return of fans to MLB stadiums, on numerous occasions individual Older Scouts have been provided information by Clubs with which they have sought reemployment evidencing coordinated conduct among Defendants to prevent the reemployment of Older Scouts.

87.     On or about August 23, 2020, the New York Yankees, through Damon Oppenheimer, vice-president and director of amateur scouting, or Steve Kmetko, national cross-checker, communicated to Scholzen that ownership did not have the money to hire Scouts. The New York Yankees organization maintains the highest payroll in professional baseball. Given that the Yankees organization has no meaningful limit to its ability to spend tens of millions of dollars on players, the "no money for scouts" excuse is a pretext for discrimination tied to an agreement of Defendants for all Clubs to reduce the number of their Older Scouts.

88.     On or about August 26, 2020, officials of the San Francisco Giants, through Zach Minasian, vice-president of professional scouting, communicated to Scholzen that they didn't know if ownership would allow a new hire because they had some Older Scouts "ready to retire" from pro scouting and didn't know if they would be allowed to replace them or not.

89.     Between November 1, 2020 and February 22, 2023, Pope interviewed with Mike Shirley, Amateur Scouting Director of the Chicago White Sox, over Zoom. When the interview ended, Mr. Shirley contacted Pope to inform him that the White Sox were unable to hire another "veteran scout."

90.     Between August 1, 2022 and December 22, 2022, Ragazzo interviewed with the Colorado Rockies. During this interview, Dan Montgomery, vice president and assistant general manager of scouting, asked Ragazzo directly about his age, and Ragazzo responded 63. Sterling

Monfort, professional scouting director, then called Ragazzo to inform him that they were going in a "different direction."

91.     Between November 1, 2021 and January 1, 2022, Ragazzo was contacted by Boston Red Sox representative Gus Quattlebaum, pro scouting director, who asked if Ragazzo was interested in a part-time scouting job. Ragazzo responded yes. However, Mr. Quattlebaum refused to hire Ragazzo and instead utilized Ragazzo's knowledge, qualifications, training and experience in seeking recommendations for Mark Kiefer and Devlin McConnell. Both are substantially younger than Ragazzo and both were subsequently hired as Scouts for the Boston Red Sox.

92.     In November 2020, Jeremy Shelley, scouting director for the San Francisco Giants, communicated with Ragazzo looking for a Scout to hire. Shelly stated that the Giants will probably "go younger" or hire internally.

93.     Between October 6, 2021 and October 15, 2021, Sheehan interviewed with Danny Ontiveros, scouting director, of the Chicago White Sox. Mr. Ontiveros informed Sheehan that he would be considered, but subsequently Sheehan was refused reemployment in favor of a 25-year-old with no previous scouting experience.

94.     Each of the Club Defendants have been contacted by one or more Plaintiffs seeking employment, but each Club has failed to hire any Plaintiffs. Accordingly, each named Plaintiff sues the specific Clubs that refused to hire him, as well as the MLB Defendants who are named as joint employers. The Clubs and Plaintiffs who have sought, but have been denied reemployment, with such Clubs, are detailed as follows:

| Club | Plaintiffs that Club failed to Hire: |
|---|---|
| Arizona Diamondbacks | Johnson; Latham; Pope. |

| | |
|---|---|
| Atlanta Braves | Bourjos; Johnson; Latham; Pope; Ragazzo; Scholzen; Trcka. |
| Baltimore Orioles | Bourjos; Pope; Runge. |
| Boston Red Sox | Benedict; Bourjos; Latham; Lekas; McIntosh; Pope; Ragazzo; Scholzen; Smith. |
| Chicago White Sox | Pope; McIntosh; Sheehan; Scholzen; Whitworth. |
| Chicago Cubs | Benedict; Bourjos; Latham; Lekas; McIntosh; Pope; Ragazzo; Smith; Trcka; Whitworth. |
| Cincinnati Reds | Bourjos; Lekas; Pope; Ragazzo; Whitworth. |
| Cleveland Guardians | Benedict; Bourjos; Johnson; Pope; Ragazzo; Smith. |
| Colorado Rockies | Benedict; Bourjos; Lekas; Pope; Ragazzo. |
| Detroit Tigers | Bourjos; Pope; Ragazzo; Runge; Scholzen; Trcka. |
| Houston Astros | Bourjos; Pope; Ragazzo; Sheehan; Scholzen. |
| Kansas City Royals | Bourjos; Ingalls; Johnson; Latham; Lekas; Pope; Ragazzo; Runge; Sheehan; Smith; Trcka. |
| Los Angeles Angels | Bourjos; Johnson; Latham; Lekas; Pope; Smith; Scholzen; Trcka; Whitworth. |
| Los Angeles Dodgers | Benedict; Bourjos; Johnson; Wilfong. |
| Miami Marlins | Johnson; Latham; Lekas; Pope; Ragazzo; Runge; Sheehan; Trcka; Wilfong. |
| Milwaukee Brewers | Bourjos; Latham; Lekas; Pope; Sheehan. |
| Minnesota Twins | Bourjos; Ingalls; McIntosh; Pope; Smith. |
| New York Mets | Bourjos; Latham; McIntosh; Pope; Ragazzo. |
| New York Yankees | Benedict; Bourjos; Ingalls; McIntosh; Pope; Ragazzo; Scholzen. |
| Oakland Athletics | Bourjos; Ingalls; Pope; Ragazzo. |

| | |
|---|---|
| Philadelphia Phillies | Bourjos; Ingalls; Johnson; Jongewaard; Lekas; Ragazzo; Runge; Sheehan; Smith; Whitworth. |
| Pittsburgh Pirates | Bourjos; Pope; Ragazzo; Scholzen; Sheehan; Smith; Whitworth. |
| San Diego Padres | Benedict; Ingalls; Lekas; Pope; Ragazzo; Scholzen. |
| San Francisco Giants | Bourjos; Latham; Ragazzo; Scholzen. |
| Seattle Mariners | Bourjos; Latham; Ragazzo. |
| St. Louis Cardinals | Pope; Runge; Trcka. |
| Tampa Bay Rays | Bourjos; Jongewaard; Latham; Lekas; Pope; Runge; Scholzen. |
| Texas Rangers | Bourjos; Johnson; Jongewaard; Pope; Ragazzo; Trcka. |
| Toronto Blue Jays | Bourjos; Jongewaard; Pope; Runge; Scholzen; Trcka. |
| Washington Nationals | Bourjos; Jongewaard; Latham; Pope; Ragazzo; Scholzen; Wilfong. |

**B.     Collective Action Allegations**

95.     Plaintiffs bring this action as a collective action under the ADEA on behalf of any Older Scouts who may opt into this action.

96.     All Older Scouts not offered reemployment by any of the Clubs since the first day of the period beginning three years prior to the date of this action are similarly situated to the named Plaintiffs. They have all worked for MLB under substantially similar conditions and have all been subjected to MLB's policy, practice and *de facto* rule of precluding Older Scouts from reemployment for open positions for Scouts for which they are qualified.

**C.     Class Action Allegations**

97.     Plaintiffs also bring this action as a class action on behalf of all Older Scouts not offered reemployment by any of the Clubs.

98.     Texas, California, North Carolina, Alabama, Florida, Arizona, New York, Indiana, Massachusetts, Minnesota, Ohio and Utah classes all meet the prerequisites of Fed. R. Civ. P. 23 in that:

a.      The classes are so numerous that joining all members is impracticable. The exact number of the members of each class is unknown, but upon information and belief it is estimated that there are over 100 Older Scouts within all such classes. As a result, joinder of all these individuals is impracticable.

b.      There are questions of fact and law common to all of the putative class members.

c.      With respect to these common issues, the claims of the named Plaintiffs are typical of the claims of Older Scouts.

d.      Plaintiffs and their counsel will fairly and adequately represent the interests of each class. The named Plaintiffs have no interests adverse to or in conflict with the class members whom they propose to represent. Plaintiffs' counsel have litigated and successfully resolved collective and class action cases.

e.      The questions of law or fact common to all putative class members predominate over any questions affecting only individual members. The common questions include whether Defendants have engaged, as joint employers, in a pattern, practice and de facto rule in denying reemployment as Scouts of Older Scouts open positions for which they were qualified due to their age.

f.      Litigating the state statutory claims of Plaintiffs and other class members as a class action is superior to other available methods for the fair and efficient adjudication of these claims. Among other things, individual adjudications would result in a

highly inefficient duplication of discovery, briefing of legal issues and other proceedings.

**D.      Exhaustion of Administrative Remedies**

99.      Plaintiffs timely filed class charges of discrimination with the Equal Employment Opportunity Commission. More than sixty (60) days have passed since they filed those charges of discrimination. Members of the proposed collective action and class actions are covered by the charges of age discrimination filed by Plaintiffs under prior legal precedent.

## V.      Causes of Action

### Count I

(Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq.)
(On Behalf of Plaintiffs and Class)

100.      Plaintiffs re-allege and incorporate the above paragraphs by reference as if fully set forth herein.

101.      MLB Defendants and Club Defendants, in systematically refusing to consider Older Scouts for reemployment in other Club Scout positions for which they are qualified, have engaged in age discrimination in violation of the ADEA. Such violations of the ADEA have been willful. As a direct and proximate result of such discrimination, Plaintiffs and similarly situated employees have lost the fair opportunity to obtain new positions with the Club Defendants.

### Count II

(Texas Labor Code Chapter § 21.101 et seq. Age Discrimination)
(On Behalf of Plaintiff Smith and Class)

102.      Plaintiffs re-allege and incorporate the above paragraphs by reference as if fully set forth herein.

103.     Subject to receipt of any necessary notice of right to sue or the passage of any necessary period of time, Plaintiff Smith brings this claim as a class action, pursuant to Fed. R. Civ. P. 23, on behalf of MLB scouts who have worked in Texas and have been subjected to the discriminatory practices described herein. Defendants' conduct, in systematically refusing to consider Smith for reemployment in other Club Scout positions for which he is qualified, have engaged in age discrimination in violation of the Texas Labor Code Chapter 21.101 et seq. Defendants' violation of Texas law has been willful. As a direct and proximate result of Defendants' discrimination, Plaintiff Smith and similarly situated employees who have worked in Texas have lost their jobs and have been denied the fair opportunity to obtain new positions with the Club Defendants.

Count III

(Texas Labor Code Chapter § 21.056 Aiding or Abetting Discrimination)<br>(On Behalf of Plaintiff Smith and the Class)

104.     Subject to receipt of any necessary notice of right to sue or the passage of any necessary period of time, Plaintiffs re-allege and incorporate the above paragraphs by reference as if fully set forth herein.

105.     Subject to receipt of any necessary notice of right to sue or the passage of any necessary period of time, Plaintiff Smith brings this claim as a class action, pursuant to Fed. R. Civ. P. 23, on behalf of MLB scouts who have worked in Texas and have been subjected to the discriminatory practices described herein. Defendants' conduct as a joint employer, aiding, abetting, inciting, or coercing Club Defendants' representatives to engage in discriminatory hiring practices based on age, violated Section 21.056 of the Texas Labor Code. As a direct and proximate result of Defendants' discrimination, Plaintiff Smith and similarly situated individuals have been denied the fair opportunity to obtain new positions as Scouts in professional baseball.

(California Fair Employment and Housing Act, Cal. Gov't Code §12900, et seq.)
(On Behalf of Plaintiff Ragazzo and Class)

106.    Plaintiffs re-allege and incorporate the above paragraphs by reference as if fully set forth herein.

107.    Subject to receipt of any necessary notice of right to sue or the passage of any necessary period of time, Plaintiff Ragazzo brings this claim as a class action, pursuant to Fed. R. Civ. P. 23, on behalf of MLB scouts who have worked in California and have been subjected to the discriminatory practices described herein. Defendants' conduct in systematically refusing to consider those Scouts over 40 for reemployment in other MLB Club positions for which they are qualified, constitutes age discrimination in violation of the California Fair Employment and Housing Act, Cal. Gov't Code §12900, et seq. Defendants' violation of California law has been willful. As a direct and proximate result of Defendants' discrimination, Plaintiff Ragazzo and similarly situated employees who live or have sought reemployment in California have been denied the fair opportunity to obtain new positions as Scouts with the Club Defendants.

Count V

(North Carolina Employment Practices Act,
N.C. Gen. Stat. Ann. §§143-422.1 to 143-422.3)
(On Behalf of Plaintiff Pope and Class)

108.    Plaintiffs re-allege and incorporate the above paragraphs by reference as if fully set forth herein.

109.    Subject to receipt of any necessary notice of right to sue or the passage of any necessary period of time, Plaintiff Pope brings this claim as a class action, pursuant to Fed. R. Civ. P. 23, on behalf of MLB scouts who have worked in North Carolina and have been subjected to

the discriminatory practices described herein. Defendants' conduct in systematically refusing to consider those Scouts for reemployment in open MLB Club positions for which they are qualified, constitutes age discrimination in violation of the North Carolina Employment Practices Act, N.C. Gen. Stat. Ann. §§143-422.1 to 143-422.3. Defendants' violation of North Carolina law has been willful. As a direct and proximate result of Defendants' discrimination, Pope and similarly situated employees who live or have sought reemployment in North Carolina have been denied the fair opportunity to obtain new positions as Scouts with the Club Defendants.

## Count VI

(Alabama Age Discrimination in Employment Act, Ala. Code § 25-1-21)
(On Behalf of Plaintiff Latham and Class)

110.    Plaintiffs re-allege and incorporate the above paragraphs by reference as if fully set forth herein.

111.    Subject to receipt of any necessary notice of right to sue or the passage of any necessary period of time, Latham brings this claim as a class action, pursuant to Fed. R. Civ. P. 23, on behalf of MLB scouts who have worked in Alabama and have been subjected to the discriminatory practices described herein. Defendants' conduct in systematically refusing to consider those Scouts over 40 for reemployment in open MLB Club positions for which they are qualified, constitutes age discrimination in violation of the Alabama Age Discrimination in Employment Act, Ala. Code § 25-1-21. Defendants' violation of Alabama law has been willful. As a direct and proximate cause of Defendants' discrimination, Plaintiff Latham and similarly situated employees who live or have sought reemployment in Alabama have been denied the fair opportunity to obtain new positions as Scouts with the Club Defendants.

## Count VII

(Florida Statute §760.10(1)(a) et seq.)

(On Behalf of Plaintiff Benedict and Class)

112.    Plaintiffs re-allege and incorporate the above paragraphs by reference as if fully set forth herein.

113.    Subject to receipt of any necessary notice of right to sue or the passage of any necessary period of time, Plaintiff Benedict brings this claim as a class action, pursuant to Fed. R. Civ. P. 23, on behalf of MLB scouts who have worked in Florida and have been subjected to the discriminatory practices described herein. Defendants' conduct in systematically refusing to consider those Scouts over 40 for reemployment in other open MLB Club positions for which they are qualified, constitutes age discrimination in violation of the Florida Statute §760.10(1)(a) et seq. Defendants' violation of Florida law has been willful. As a direct and proximate result of Defendants' discrimination, Plaintiff Benedict and similarly situated employees who live or have sought reemployment in Florida have been denied the fair opportunity to obtain new positions as Scouts with the Club Defendants.

## Count VIII

(Arizona Civil Rights Act, A.R.S. §41-1463 et seq.)
(On behalf of Plaintiff Scholzen and Class)

114.    Plaintiffs re-allege and incorporate the above paragraphs by reference as if fully set forth herein.

115.    Subject to receipt of any necessary notice of right to sue or the passage of any necessary period of time, Scholzen brings this claim as a class action, pursuant to Fed. R. Civ. P. 23, on behalf of MLB scouts who have worked in Arizona and have been subjected to the discriminatory practices described herein. Defendants' conduct in systematically refusing to consider those Scouts over 40 for reemployment in other open MLB Club positions for which they are qualified, constitutes age discrimination in violation of the Arizona Civil Rights Act, A.R.S.

§41-1463 et seq. Defendants' violation of Arizona law has been willful. As a direct and proximate result of Defendants' discrimination, Plaintiff Scholzen and similarly situated employees who live or have sought reemployment in Arizona have been denied the fair opportunity to obtain new positions as Scouts with the Club Defendants.

Count IX

(The New York City Human Rights Law,
Title 8 of the Administrative Code of the City of New York)
(On Behalf of Plaintiff Sheehan and Class)

116.     Plaintiffs re-allege and incorporate the above paragraphs by reference as if fully set forth herein.

117.     Subject to receipt of any necessary notice of right to sue or the passage of any necessary period of time, Sheehan brings this claim as a class action, pursuant to Fed. R. Civ. P. 23, on behalf of MLB scouts who have worked in New York and have been subjected to the discriminatory practices described herein. Defendants' conduct in systematically refusing to consider those Scouts over 40 for other reemployment in open MLB Club positions for which they are qualified, constitutes age discrimination in violation of The New York City Human Rights Law, Title 8 of the Administrative Code of the City of New York. Defendants' violation of New York law has been knowing and willful. As a direct and proximate result of Defendants' discrimination, Plaintiff Sheehan and similarly situated employees who live or have sought reemployment in New York have been denied the fair opportunity to obtain new positions as Scouts with the Club Defendants.

Count X

(Indiana Code § 22-9-2-2 Unfair Employment Practice)
(On Behalf of Plaintiff Trcka and Class)

118.     Plaintiffs re-allege and incorporate the above paragraphs by reference as if fully set forth herein.

119.     Subject to receipt of any necessary notice of right to sue or the passage of any necessary period of time, Plaintiff Trcka brings this claim as a class action, pursuant to Fed. R. Civ. P. 23, on behalf of MLB scouts who have worked in Indiana and have been subjected to the discriminatory practices described herein. Defendants' conduct in systematically refusing to consider those Scouts over 40 for reemployment in other open MLB Club positions for which they are qualified, constitutes age discrimination in violation of Indiana Code § 22-9-2-2 prohibiting Unfair Employment Practice. Defendants' violation of Indiana law has been willful. As a direct and proximate cause of Defendants' discrimination, Plaintiff Trcka and similarly situated employees who live or have sought reemployment in Indiana have been denied the fair opportunity to obtain new positions as Scouts with the Club Defendants.

Count XI

(Massachusetts Fair Employment Practices Act (M.G.L. c. 151B))<br>(On Behalf of Plaintiff Lekas and Class)

120.     Plaintiffs re-allege and incorporate the above paragraphs by reference as if fully set forth herein.

121.     Subject to receipt of any necessary notice of right to sue or the passage of any necessary period of time, Plaintiff Lekas brings this claim as a class action, pursuant to Fed. R. Civ. P. 23, on behalf of MLB scouts who have worked in Massachusetts and have been subjected to the discriminatory practices described herein. Defendants' conduct in systematically refusing to consider those Scouts over 40 for reemployment in other open MLB Club positions for which they are qualified, constitutes age discrimination in violation of Massachusetts Fair Employment Practices Act (M.G.L. c. 151B). Defendants' violation of Massachusetts law has been willful. As

a direct and proximate result of Defendants' discrimination, Plaintiff Lekas and similarly situated employees who live or have sought reemployment in Massachusetts have been denied the fair opportunity to obtain new positions as Scouts with the Club Defendants.

Count XII

(Minnesota Human Rights Act Chapter 363A.08 Prohibiting Unfair Discriminatory Practices Relating to Employment or Unfair Employment Practice)<br>(On Behalf of Plaintiff McIntosh and Class)

122. Plaintiffs re-allege and incorporate the above paragraphs by reference as if fully set forth herein.

123. Subject to receipt of any necessary notice of right to sue or the passage of any necessary period of time, McIntosh brings this claim as a class action, pursuant to Fed. R. Civ. P. 23, on behalf of MLB scouts who have worked in Minnesota and have been subjected to the discriminatory practices described herein. Defendants' conduct in systematically refusing to consider those Scouts over 40 for reemployment in other open MLB Club positions for which they are qualified, constitutes age discrimination in violation of Minnesota Human Rights Act Chapter 363A.08 Prohibiting Unfair Discriminatory Practices Relating to Employment or Unfair Employment Practice. Defendants' violation of Minnesota law has been willful. As a direct and proximate result of Defendants' discrimination, Plaintiff McIntosh and similarly situated employees who live or have sought reemployment in Minnesota have been denied the fair opportunity to obtain new positions as Scouts with the Club Defendants.

<u>Count XIII</u>

(Ohio Revised Code, Title 41 Labor and Industry,
Section 4112.14 Age Discrimination)
(On Behalf of Plaintiff Jongewaard)

124.     Plaintiffs re-allege and incorporate the above paragraphs by reference as if fully set forth herein.

125.     Subject to receipt of any necessary notice of right to sue or the passage of any necessary period of time, Jongewaard brings this claim as a class action, pursuant to Fed. R. Civ. P. 23, on behalf of MLB scouts who have worked in Ohio and have been subjected to the discriminatory practices described herein. Defendants' conduct in systematically refusing to consider those Scouts over 40 for reemployment in other open MLB Club positions for which they are qualified, constitutes age discrimination in violation of Ohio Revised Code, Title 41 Labor and Industry, Section 4112.14 prohibiting Age Discrimination. Defendants' violation of Ohio law has been willful. As a direct and proximate cause of Defendants' discrimination, Plaintiff Jongewaard and similarly situated employees who live or have sought reemployment in Ohio have been denied the fair opportunity to obtain new positions as Scouts with the Club Defendants.

<u>Count XIV</u>

(Utah Antidiscrimination Act, Utah Code Ann. §34A-5-101 et seq.)
(On Behalf of Plaintiff Scholzen and Class)

126.     Plaintiffs re-allege and incorporate the above paragraphs by reference as if fully set forth herein.

127.     Subject to receipt of any necessary notice of right to sue or the passage of any necessary period of time, Scholzen brings this claim as a class action, pursuant to Fed. R. Civ. P. 23, on behalf of MLB scouts who have worked in Utah and have been subjected to the discriminatory practices described herein. Defendants' conduct in systematically refusing to

consider those Scouts over 40 for reemployment in other open MLB Club positions for which they are qualified, constitutes age discrimination in violation of Utah Antidiscrimination Act, Utah Code Ann. § 34A-5-101 et seq. prohibiting Age Discrimination. Defendants' violation of Utah law has been willful. As a direct and proximate result of Defendants' discrimination, Plaintiff Scholzen and similarly situated employees who have worked in Utah have been denied the fair opportunity to obtain new positions as Scouts with the Club Defendants.

## VI.  Jury Demand

128.  Plaintiffs request a trial by jury on all claims and issues so triable.

## VII.  Relief Sought

129.  WHEREFORE, Plaintiffs request that this Court grant the following relief:

a.  Permission for Plaintiffs to notify other Older Scouts of their right to opt-in to this action under the ADEA pursuant to 29 U.S.C. §§216(b), 626(b);

b.  Find that MLB Defendants and Club Defendants violated the Age Discrimination in Employment Act, 29 U.S.C. §621 *et seq*.;

c.  Certify a class action pursuant to Fed. R. Civ. P. 23 under Count II and appoint Smith and his counsel to represent a class of Older Scouts in Texas over the age of forty (40);

d.  Certify a class action pursuant to Fed. R. Civ. P. 23 under Count IV and appoint Plaintiff Ragazzo and his counsel to represent a class of Older Scouts in California over the age of forty (40);

e.  Certify a class action pursuant to Fed. R. Civ. P. 23 under Count V and appoint Plaintiff Pope and his counsel to represent a class of Older Scouts in North Carolina who were over the age of forty (40);

f.      Certify a class action pursuant to Fed. R. Civ. P. 23 under Count VI and appoint Plaintiff Latham and his counsel to represent a class of Older Scouts in Alabama who were over the age of forty (40);

g.      Certify a class action pursuant to Fed. R. Civ. P. 23 under Count VII and appoint Plaintiff Benedict and his counsel to represent a class of Older Scouts in Florida who were over the age of forty (40);

h.      Certify a class action pursuant to Fed. R. Civ. P. 23 under Count VIII and appoint Plaintiff Scholzen and his counsel to represent a class of Older Scouts in Arizona who were over the age of forty (40);

i.      Certify a class action pursuant to Fed. R. Civ. P. 23 under Count IX and appoint Plaintiff Sheehan and his counsel to represent a class of Older Scouts in New York who were over the age of forty (40);

j.      Certify a class action pursuant to Fed. R. Civ. P. 23 under Count X and appoint Plaintiff Trcka and his counsel to represent a class of Older Scouts in Indiana who were over the age of forty (40);

k.      Certify a class action pursuant to Fed. R. Civ. P. 23 under Count XI and appoint Plaintiff Lekas and his counsel to represent a class of Olde Scouts in Massachusetts who were over the age of forty (40);

l.      Certify a class action pursuant to Fed. R. Civ. P. 23 under Count XII and appoint Plaintiff McIntosh and his counsel to represent a class of Older Scouts in Minnesota who were over the age of forty (40);

m.      Certify a class action pursuant to Fed. R. Civ. P. 23 under Count XIII and appoint Plaintiff Jongewaard and his counsel to represent a class of Older Scouts in Ohio

who were over the age of forty (40);

n.      Certify a class action pursuant to Fed. R. Civ. P. 23 under Count XIV and appoint Plaintiff Scholzen and his counsel to represent a class of Older Scouts in Utah who were over the age of forty (40);

o.      Award back pay and front pay in an amount according to proof;

p.      Award compensatory damages, as allowed by law, in an amount according to proof;

q.      Award punitive damages, as allowed by law, in an amount according to proof;

r.      Award all attorney's fees and costs incurred prosecuting this action;

s.      Award liquidated damages under the ADEA;

t.      Award pre-judgment and post-judgment interest at the maximum amount allowable by law;

u.      Issue injunctive relief in the form of an order directing the Defendants to comply with the ADEA and applicable state anti-discrimination statutes; and

v.      Grant other relief to which Plaintiffs and class members may be entitled.

Respectfully submitted,

/s/ Robert E. Goodman, Jr.
Robert E. Goodman, Jr.
Member of the Bar of the District of Massachusetts
Massachusetts BBO# 549175
Texas State Bar No. 08158100
reg@kilgorelaw.com
Admitted in the District of Colorado

Mitchell C. Abeita
Texas State Bar No. 24103694
mca@kilgorelaw.com
Admitted in the District of Colorado

Eric Roberson

Texas State Bar No. 00792803
enr@kilgorelaw.com
Admitted in the District of Colorado

Kilgore & Kilgore, PLLC
3141 Hood Street, Suite 500
Dallas, Texas 75219
(214) 379-0823 – Goodman
(214) 379-0833 – Abeita
(214) 379-0817 – Roberson
(214) 379-0837 – Fax

**ATTORNEYS FOR PLAINTIFFS**


## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that all counsel of record will be served via ECF simultaneously with filing of this document.

/s/ Robert E. Goodman, Jr.