IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico

Civil Action No. 1:23-cv-01563-DDD-KAS

JAMES S. BENEDICT, et al,

     Plaintiffs,

v.

ROBERT MANFRED, et al,

     Defendants.

---

## ORDER ON MOTION TO DISMISS

---

Professional baseball is more than a pastime—it is a business. The business of baseball, like any other business, requires hiring, firing, and contracting with workers. This case arises from those aspects of the business of baseball. Plaintiffs are a collective of former professional baseball scouts who allege an industry-wide scheme to blacklist and exclude scouts over the age of forty from working in the major leagues. They brought this suit under the Age Discrimination in Employment Act against each of the 30 Major League Baseball Clubs, the Commissioner of Baseball Robert Manfred, and the Office of the Commissioner of Baseball (the association of clubs that does business as "Major League Baseball").

All Defendants, other than the Colorado Rockies, have moved to dismiss the claims brought against them in this district for lack of personal jurisdiction and improper venue. Because jurisdiction and venue in this district are dubious at best, I exercise my discretionary authority under

28 U.S.C. § 1404(a) to transfer this case to the Southern District of New York, as requested in the alternative by the Plaintiffs.

## BACKGROUND

Plaintiffs allege that the every Major League Club, acting in concert with each other and the MLB Defendants, has systematically favored recruiting and retaining younger scouts over older scouts.[1] This age-oriented shift coincided with "the adoption of a 'moneyball' statistically-oriented approach by Clubs, leading to analytics and video scouting as the primary focus of Scouts," and was based on "a false stereotype that Older Scouts lacked the ability to use analytics and engage in video scouting with the same acumen as Younger Scouts." Doc. 60 at 21. The shift is alleged to have originated at the top of MLB, with Commissioner Manfred himself, who, Plaintiffs claim, abolished the scouting "wire" and limited lateral hiring opportunities for scouts. *Id.* at 25, 28. Scout/Club labor relations are tightly regulated nationwide by the MLB, which issues and maintains policies that control hiring practices, including limiting lateral scout recruitment, and issuing form contracts for scouts. *Id* at 22–24.

The complaint has much to say about the structure, history, and state of the baseball scouting market, but Plaintiffs' core allegation is that during the 2020 season, the MLB Defendants and the Clubs began engaging in coordinated age discrimination against scouts over the age of forty "by systematic non-renewals and other means." *Id.* at 29–30. From 2020–2022, during the Covid-19 pandemic, scouts faced mass layoffs and reductions in numbers. *Id.* at 30–31. Plaintiffs allege that, since those layoffs, older scouts have been frozen out of the market

---

[1] The facts in this section are drawn from the Fourth Amended Complaint and are taken as true in this posture. *See generally*, Doc. 60.

nationwide. *Id.* They allege that the Defendants blacklisted certain scouts and prevented word of mouth opportunities from reaching those scouts. *Id.* Included in the complaint are numerous examples of individual Plaintiffs who attempted to gain re-employment with various clubs after being let go during the pandemic, but were rejected in favor of younger scouts. *Id.* at 31–36.

Plaintiffs claim that these actions violate the Age Discriminate in Employment Act, 29 U.S.C. § 621. In previous complaints, they also brought claims under various state and local anti-discrimination laws, but voluntarily dropped those claims in their amended complaint, after the Defendants filed a motion to dismiss. The Colorado Rockies have filed an answer to the pending Fourth Amended Complaint, but all other defendants have filed a Motion to Dismiss for lack of personal jurisdiction and improper venue under Fed. R.s Civ. P. 12(b)(2) and 12(b)(3).

Plaintiffs argue that jurisdiction and venue are proper in this District because the Clubs and the MLB Defendants jointly coordinated to discriminate against the older scouts, knowing that substantial effects of that coordination would occur in every state where a major league team is located, including in this District.[2] These arguments, discussed below, would require extending or disagreeing with existing precedent. None are sufficiently convincing to retain venue in this district over the Southern District of New York.[3]

---

[2] For purposes of this order, it is assumed that the Colorado Rockies are a Major League team. *See Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007).

[3] Both in response to the Motion to Dismiss and in a hearing on the motion, Plaintiffs requested transfer to the Southern District of New York as a preferred alternative to dismissal in the event I found venue or jurisdiction to be lacking. See Doc. 66 at 38.

# DISCUSSION

## I.   Transfer of Venue

The appropriate venue in a civil action is either (1) a judicial district in which any defendant resides, if all defendants are residents of the state in which the district is located; or (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. 28 U.S.C. § 1391(b). Plaintiffs claim the second provision provides venue here.

"A court may *sua sponte* cure jurisdictional and venue defects by transferring a suit under the federal transfer statutes, 28 U.S.C. §§ 1406(a) and 1631, when it is in the interests of justice." *Trujillo v. Williams*, 465 F.3d 1210, 1222 (10th Cir. 2006). Even if venue is proper in this forum, a court has discretionary authority to transfer a case if it promotes the interests of justice to do so. 28 U.S.C § 1404(a). Under "§ 1404(a), both the transferor and the transferee court have venue over the action, but it is more efficient to prosecute the action in the latter court. Conversely, in the case of § 1406(a), the transferor court lacks venue and *must* transfer the action in order for it to proceed." *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 n.3 (10th Cir. 1991). Whichever statute applies here, a transfer of venue is warranted.

In ordering a discretionary transfer under section 1404(a), district courts consider a variety of factors including the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; and all other considerations of a practical nature that make a trial easy, expeditious and economical. *Texas Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967). "Section 1404(a) is intended to place discretion in the district court to adjudicate

. . . transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (internal quotation marks omitted).

Transfer of this case is in the interests of justice for at least three reasons. First, whether venue is proper at all in this district is questionable. Plaintiffs argue that a substantial part of the events giving rise to their claims occurred in Colorado, because the Colorado Rockies refused employment to five of the Plaintiffs. 28 U.S.C. § 1391(b). But as Defendants point out, there are no allegations that those Plaintiffs ever entered Colorado seeking employment. That is a very thin peg on which to hang the venue of such a large case. The actions of one defendant out of dozens, affecting a handful of Plaintiffs out of dozens, is not a very "substantial part" of the actions giving rise to Plaintiffs' claims. Other than the Rockies' specific employment decisions, the only thing tying the Defendants to this forum is the ethereal possibility that the actions of the Clubs and the MLB nationwide limited the number of scouting job opportunities available or known to Plaintiffs in Colorado. Even if that possibility turns out to be true, the allegations of the *Fourth* Amended Complaint give no reason to think the impact would be measurable enough to constitute a "substantial part" of the action. And if, after discovery, Plaintiffs turn out to be mistaken in their speculation venue will be improper entirely, and transfer would be mandatory. 28 U.S.C. § 1406(a). These concerns are enough to weigh in favor of transfer.

Second, considerations of convenience favor transfer to the Southern District of New York. Plaintiffs' admitted reasons for suing in this forum—that Denver is a travel hub, that admission to practice in the district is straightforward, and that the judges here are capable—provide little to no reason to prefer this venue over New York. Although a plaintiff's choice of forum is generally afforded deference, it is given

significantly less weight where, as here, no plaintiff is a resident of the forum and there isn't a material connection between the majority of the Defendants and the forum. *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010). To the extent that the presence of the Rockies in this district provides convenient ties to this venue, the presence of both the New York Yankees and the Commissioner of Baseball provides stronger ties in the Southern District of New York.[4] The presence of the Commissioner of Baseball, in particular, makes that venue more convenient. Evidence of nationwide hiring controls or scout blacklists—witnesses who could testify regarding the alleged nationwide conspiracy, or any records regarding scout/club labor relations— are most likely to be discoverable and produced by the Commissioner. *See In re Genentech, Inc.,* 566 F.3d 1338, 1345 (Fed. Cir. 2009) ("the place where the defendant's documents are kept weighs in favor of transfer to that location").

Third, the majority of Plaintiffs were not injured by any actions with any connection to this venue. Plaintiffs specify that "each named Plaintiff sues the specific Clubs that refused to hire him, as well as the MLB Defendants who are named as joint employers." Doc. 59 at 34. That means the many Plaintiffs like, for example, Scott Trcka—who brings claims against the Atlanta Braves, Chicago Cubs, Detroit Tigers, Kansas City Royals, Los Angeles Angels, Miami Marlins, St. Louis Cardinals, Texas Rangers, and the Toronto Blue Jays, plus the MLB—would be pursuing claims against Defendants unconnected to this form for

---

[4] As the parties acknowledged on the record, although venue is proper in this district as to the Rockies, convenience and the interests of justice require transferring the entire case together, including claims against the Rockies.

injuries not sustained in this forum.[5] To bring those Defendants into court in Colorado to account for their actions taken elsewhere is precisely the type of "unfair or inconvenient" proceeding that the venue statute aims to prevent. *See LeRoy v. Great W. United Corp.*, 443 U.S. 173, 183–84 (1994). That problem is lessened or eliminated in the Southern District of New York, where the Commissioner of Baseball serves as a central hub for all Clubs' scout hiring activity, including approving contracts and regulating the labor market.

These considerations are sufficient for me to conclude that venue, if it is even proper in this forum at all, would be more appropriate and convenient in the Southern District of New York.

## II. Personal Jurisdiction

Although concerns over venue alone would suffice to warrant a transfer, serious concerns about personal jurisdiction over most of the defendants buttress the conclusion that transfer is appropriate. 28 U.S.C. § 1631 ("Whenever a . . . that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought at the time it was filed or noticed."); *Ross v. Colorado Outward Bound School, Inc.*, 822 F.2d 1524, 1527 (10th Cir.1987) (lack of personal jurisdiction warrants transfer under § 1631).

To exercise personal jurisdiction over a party, the burden is on the Plaintiff to prove that Colorado's long-arm statute establishes personal jurisdiction, and that exercising jurisdiction would comport with due process under the Fourteenth Amendment. *Old Republic Ins. Co. v.*

---

[5] Plaintiffs' arguments that the Clubs and MLB acted as joint employers and in conspiracy are insufficient to impute the actions of the Rockies to all other Defendants for the purposes of venue. As discussed below, those arguments are also insufficient for jurisdictional purposes.

*Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017). Because "Colorado's long-arm statute is coextensive with the constitutional imitations imposed by the due process clause," the sole inquiry is whether "jurisdiction is consistent the due process clause." *Shell v. Am. Family Rights Ass'n*, 899 F. Supp. 2d 1035, 1048 (D. Colo. 2012); *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005).

"Depending on their relationship to the plaintiff's cause of action, an out-of-state defendant's contacts with the forum state may give rise to either general (all-purpose) jurisdiction or specific (case-linked) jurisdiction." *Old Republic*, 877 F.3d at 903 (citing *Intercon, Inc. v. Bell Atl. Internet Sols., Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000). Plaintiffs maintain that MLB, as an unincorporated association, is subject to general jurisdiction in any district where the Clubs themselves are at home (including Colorado), and that all Defendants are subject to specific jurisdiction here based on conspiracy jurisdiction and joint employer status.[6]

## A.  General Jurisdiction

To exercise general personal jurisdiction over a Defendant under the Due Process Clause of the Fourteenth Amendment, an out-of-state "corporation's affiliations with the State [must be] so continuous and systematic' as to render it essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014). The archetypal examples of

---

[6] In a footnote, and at the hearing on the present motion, the Defendants suggest dismissal of Commissioner Manfred, separate from any other relief, based on a lack of allegations specific to him. Doc. 63 at 12 n.4. But the complaint alleges that Commissioner Manfred was personally a part of the coordinated conspiracy, and it includes allegations of multiple actions that apparently were ordered directly by Commissioner Manfred. See Doc. 60 at 25, 28. In any event, given my decision to transfer this case to another court, I decline to rule on this suggestion.

this kind of affiliation are a corporation's place of incorporation and its principal place of business. *Id.*

Plaintiffs maintain that for an unincorporated association, like MLB, any state in which a member of the association is at home may appropriately exercise general jurisdiction over the association itself. Doc. 66 at 21–23. In *Goodyear*, the Supreme Court held that "[f]or an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). Plaintiff argues that the "paradigm forum" for an unincorporated association is wherever its members are at home. True, an unincorporated association takes on the citizenship of its members for purposes of diversity jurisdiction. *See Siloam Springs Hotel, LLC v. Century Sur. Co.*, 781 F.3d 1233, 1234 (10th Cir. 2015). But Plaintiff is unable to point to a single case, binding or persuasive, that adopted this same citizenship paradigm in the personal jurisdiction context.

Other courts to have considered this issue have noted, with varying degrees of analysis, that the citizenship test for diversity jurisdiction does not transplant to personal jurisdiction. *Frank v. P N K (Lake Charles) L.L.C.*, 947 F.3d 331, 338 n.10 (5th Cir. 2020) ("Our circuit and several in-circuit district courts have applied the 'at home' test to entities other than corporations, albeit without analyzing whether the entity type changes the outcome."); *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 332 (2d Cir. 2016), *cert. denied, Sokolow v. Palestine Liberation Org.*, 138 S. Ct. 1438 (2018) ("there is no reason to invent a different test for general personal jurisdiction depending on whether the defendant is an individual, a corporation, or another entity"); *Mountain Funding, LLC v. Blackwater Crossing, LLC*, 2006 WL 1582403, at *3 (W.D.N.C.

June 5, 2006) ("The practice of disregarding [an unincorporated association] as an entity and looking to the citizenship of its members is only used to determine whether a court has diversity for subject matter jurisdiction. . . . This principle has not been applied to personal jurisdiction, which presents distinct due process issues."); *Stacker v. Intellisource, LLC*, No. 20-2581-JWB, 2021 WL 2646444, at *3 n.2 (D. Kan. June 28, 2021) ("Although for subject matter jurisdiction purposes a limited liability company takes the citizenship of its members, that principle has not been applied to personal jurisdiction.").[7]

Although it would undoubtedly make for a good academic paper, Plaintiffs' argument that the *Daimler* "at home" test should be applied to unincorporated associations based on the citizenship paradigm presents distinct due process issues and carries some tension with binding precedent. In *Daimler*, the Court rejected a formulation of general jurisdiction that would subject a corporation to suit anywhere it "engage[d] in a substantial, continuous, and systematic course of business" as "unacceptably grasping" *Daimler*, 571 U.S. at 137. Though unincorporated associations are in many ways distinct from corporations, they are not so different that subjecting them to suit anywhere they have members, a far lower bar than substantial, continuous and systematic courses of business, would not run afoul of this same principle. Like many other courts, I "reject the idea that . . . professional sports leagues are automatically to be yoked to the jurisdiction of every state where any

---

[7] Defendants also point to a set of cases that did not follow Plaintiffs' theory, specifically in the context of sports leagues like MLB. *See Donatelli v. Nat'l Hockey League*, 893 F.2d 459, 470 (1st Cir. 1990); *Aldrich v. Nat'l Collegiate Athletic Ass'n*, 484 F. Supp. 3d 779 (N.D. Cal. 2020); *Dallas Texans Soccer Club v. Major League Soccer Players Union*, 247 F. Supp. 3d 784, 788-89 (E.D. Tex. 2017).

member club may have established minimum contacts." *Donatelli*, 893 F.2d at 470.

### B.  Specific Jurisdiction

To properly exercise specific jurisdiction, a court must assess three requirements: (1) that the defendant purposefully directed its activities at, or availed itself of, the forum; (2) that the suit arise out of or relate to those activities, and (3) that exercising jurisdiction is compatible with "traditional notions of fair play and substantial justice. *See Hood v. American Auto Care, LLC*, 21 F.4th 1216, 1221–22 (10th Cir. 2024); *Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017 (2021).

No one disputes whether the Clubs and MLB purposefully direct activities at Colorado. Baseball fans in this forum enjoyed (to varying degrees, depending on their rooting interests) many games at Coors Field between the Colorado Rockies and each of the Clubs during the time period identified in the complaint, games which were organized by the MLB Defendants. In addition to the physical games played here, revenue generated by those games is shared in part with each Club and MLB itself. A suit arising from those activities would no doubt be compatible with fair play and substantial justice. If Plaintiffs' claims were derived in some way from the playing of baseball—fans struck by foul balls, or repeated noise complaints about rowdy fans—specific jurisdiction would be far more certain. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985).

But Plaintiffs' age discrimination claims are not derived from the *playing* of baseball or the somewhat broader act of putting on baseball games. The requirement that a suit arise out of or relate to the activities that a defendant directed at the forum precludes such a tangential jurisdictional anchor. *See Bristol-Myers Squibb Co. v. Superior Ct. of Cal.,*

*S. F. Cnty.*, 582 U.S. 255, 264 (2017) ("For specific jurisdiction, a defendant's general connections with the forum are not enough."). Instead, the question is whether the Defendants, other than the Rockies, have directed activities at the forum which give rise to—or at least relate to—the age discrimination allegedly suffered by the Plaintiffs. *See Ford Motor Co.*, 141 S. Ct. at 1027.

The Rockies are the only Defendant alleged to have conducted any scout hiring/refusals-to-hire in the forum. But Plaintiffs argue that their claims arise and relate to the other Defendants' actions by way of conspiracy jurisdiction, and a joint-employer theory of jurisdiction.

Conspiracy jurisdiction sometimes allows a foreign co-conspirator to be haled into court based on "the existence of a conspiracy and [overt] acts of a co-conspirator within the forum." *Newsome v. Gallacher*, 722 F.3d 1257, 1265 (10th Cir. 2013) (quoting *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1069 (10th Cir. 2007)). "[A] co-conspirator's presence within the forum might reasonably create the 'minimum contacts' with the forum necessary to exercise jurisdiction over another co-conspiratory if the conspiracy is directed towards the forum, or substantial steps in furtherance of the conspiracy are taken in the forum." *Melea*, 511 F.3d at 1070.

But the Tenth Circuit has also "cautioned that 'to hold that one co-conspirator's presence in the forum creates jurisdiction over other co-conspirators threatens to confuse the standards applicable to personal jurisdiction and those applicable to liability.'" *Hart v. Salois*, 605 F. App'x 694, 700 (10th Cir. 2015) (quoting *Melea*, 511 F.3d at 1070). "In order for personal jurisdiction based on a conspiracy theory to exist, the plaintiff must offer more than 'bare allegations' that a conspiracy existed and must allege facts that would support a prima facie showing of a conspiracy." *Melea*, 511 F.3d at 1069 (quoting *Lolavar v. de Santibanes*, 430 F.3d 221, 229 (4th Cir. 2005)).

Plaintiffs have alleged that the Rockies specifically denied opportunities to Plaintiffs Benedict, Bourjos, Lekas, Pope, and Ragazzo. Doc. 59 at 34–35. They have also alleged that the Rockies denied those plaintiffs opportunities in coordination with the other Clubs and MLB. This would seem to be enough under *Newsome* and *Melea*, because the Rockies' hiring decisions would be overt acts of a co-conspirator within the forum, and substantial steps in furtherance of the conspiracy. 722 F.3d at 1265; 511 F.3d at 1070.

But while the complaint suggests a factual conspiracy existed between the Defendants to blacklist and limit opportunities for older scouts, there is no claim to support a legal conspiracy. In each case where the Tenth Circuit has recognized conspiracy jurisdiction, the plaintiffs raised civil conspiracy as a claim for relief. *See Newsome*, 722 F.3d at 1265; *Melea*, 511 F.3d at 1070; *Hart*, 605 F. App'x at 700. "Mere allegation of conspiracy, without some sort of prima facie factual showing of a conspiracy, cannot be the basis of personal jurisdiction of co-conspirators outside the territorial limits of the court." *Baldridge v. McPike, Inc.*, 466 F.2d 65, 67 (10th Cir. 1972).

Plaintiffs here can hardly argue that they have alleged a "prima facie showing of a conspiracy" when they have not made any such claim for relief. *Melea*, 511 F.3d at 1069; s*ee also EIG Energy Fund XIV, L.P. v. Petróleo Brasileiro S.A.*, 246 F. Supp. 3d 52, 90 (D.D.C. 2017) ("conspiracy jurisdiction . . . cannot exist unless the . . . [c]omplaint actually states a plausible claim of civil conspiracy"). Further damning, age discrimination claims under the ADEA "cannot be the basis for a civil conspiracy cause of action." *Francis v. Perez*, 256 F. Supp. 3d 1, 6 (D.D.C. 2017*); see also Schwinn v. Hum. Affairs Int'l, Inc.*, No. 99-4140, 2000 WL 731785, at *1 (10th Cir. June 8, 2000). Plaintiffs' failure to cite a single case in which conspiracy jurisdiction existed absent a prima facie

- 13 -

showing to support a civil conspiracy claim, coupled with the Tenth Circuit's cautions over the danger of expanding that doctrine, leads me to think that I could not exercise specific jurisdiction over the Clubs and the MLB Defendants on these grounds.

The joint-employer theory fares little better. The theory relies on statutory definitions of the term "employer" which can group together more than one entity for the purposes of federal discrimination claims. While courts have split on the issue of whether multiple entities acting as joint employers or a single enterprise can be grouped together for personal jurisdiction, "[t]here is no binding authority in the Tenth Circuit that personal jurisdiction can extend to a nonresident company under either theory." *Creech v. P.J. Wichita, L.L.C.*, No. 16-CV-2312-JAR-GEB 2017 WL 914810 at *3 (D. Kan. Mar 8, 2017). And I am not convinced to hold so here.

Personal jurisdiction and statutory liability are distinct concepts—one does not substitute for another. "[A] state or federal statute cannot transmogrify insufficient minimum contacts into a basis for personal jurisdiction by making these contacts elements of a cause of action." *Cent. States Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 944–45 (7th Cir. 2000). Surveying other courts that have collapsed the distinction reveals that "[t]he courts applying an employer liability test to determine personal jurisdiction have largely done so without analysis." *Creech* 2017 WL 914810 at *3 (collecting cases). Doing so would raise the exact concerns that the Tenth Circuit warned of in the context of conspiracy jurisdiction. To hold that entities meeting the statutory definition of joint employer for determining their liability are also meeting the requirements of specific jurisdiction anywhere a joint entity resides "threatens to confuse the standards applicable to personal jurisdiction and those applicable to liability." *Melea*, 511 F.3d at 1070.

I note these repeated stretches in jurisdictional doctrine because they reinforce the appropriateness of a transfer to the Southern District of New York, where the forum contacts of the moving defendants are undoubtedly stronger, and jurisdiction therefore less problematic. See 28 U.S.C. § 1631.[8] But I also recognize the frustration of all parties with the tangle of personal jurisdiction doctrine and the inefficiencies it can cause. Regardless, I needn't decide explicitly the issue of jurisdiction today, because transfer of venue is warranted.[9] The role of a judge has often been described as "calling balls and strikes." This case is a ball: filed in a district outside the strike zone.

## III.   Costs and Dismissal Without Prejudice

Finally, Defendants ask that the state and local claims that the Plaintiffs dropped in their amended complaint be dismissed with prejudice, and that Defendant be awarded fees and costs for the time spent in opposing those claims. These are discretionary matters. *AeroTech, Inc. v. Estes*, 110 F.3d 1523, 1528 n.1 (10th Cir. 1997). I find that

---

[8] Plaintiffs' claims against the Yankees and the Office of the Commissioner undoubtably "could have been brought" originally in that District, so transfer of the case there is proper. See 28 U.S.C. §§ 1631, 1404. That is not to say that Plaintiffs' venue and jurisdiction theories as to other defendants will ultimately be successful in the Southern District of New York—that is for the able judges of that district to decide. But if a substantial part of the actions giving rise to these claims are sufficient for venue and personal jurisdiction over all Defendants anywhere, it is there.

[9] "[P]ersonal jurisdiction over the defendant is not a prerequisite" to transfer. *Hapaniewski v. City of Chicago Heights*, 883 F.2d 576, 579 (7th Cir. 1989), *cert. denied*, 493 U.S. 1071 (1990); *see also Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962) ("The language of § 1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendant or not.").

Defendants have not provided sufficient reason either for dismissal with prejudice, or for costs and fees.

As noted in Plaintiffs' motion to amend, they voluntarily dismissed their state and local claims. Doc. 51 at 14. That statement must be taken with a grain of salt, given that Defendants had already filed a motion to dismiss those claims. But still, Plaintiff's "voluntary" dismissal saved the Defendants the additional time of preparing a reply brief and making arguments in court related to the state claims. The moving Defendants have yet to file an answer to any claims, dropped or not, nor have they moved for summary judgment. If Plaintiffs discover additional evidence supporting those claims, and it is procedurally proper to do so, these claims may be revived in the future. The fact that Defendants had filed a motion to dismiss should not prevent such action. Plaintiffs' claims will remain dismissed without prejudice.

While I could impose fees in this posture,[10] both parties have, in my view, exaggerated the extent to which opposing counsel has engaged in gamesmanship and manipulative litigation tactics. *See e.g.*, Doc. 63 at 36 (accusing Plaintiffs of failing to conduct a good faith investigation under Rulle 11(b)); Doc. 66 at 35 n.8 (accusing Defendants of "horrifically miscit[ing]" precedent, "approach[ing] being sanctionable as lacking candor to the Court."). The case presented novel jurisdictional issues and competing legal theories; neither side's position was as clearly right as they seem to believe. That is hardly exceptional in litigation, and I decline to award costs to either side.

---

[10] Plaintiffs rely on precedent from the Fifth Circuit that was expressly overruled on the matter of awarding costs after dismissal. *See Automation Support, Inc. v. Humble Design, L.L.C.*, 982 F.3d 392, 395 n.2 (5th Cir. 2020) (overruling *Williams v. Ezell*, 531 F.2d 1261 (5th Cir. 1976)).

**CONCLUSION**

It is ORDERED that:

The MOTION TO DISMISS, **Doc. 63**, is **DENIED**; and

It is FURTHER ORDERED that this case be **TRANSFERRED** to the United States District Court for the Southern District of New York.

DATED: May 20, 2024                    BY THE COURT:

Daniel D. Domenico
United States District Judge